The estate of the defendant doctor appeals from a $3 million medical malpractice judgment entered following a nonjury trial. We affirm, conditioned upon the filing of a remittitur.
Lois McLeod sued Dr. Theodore A. Torsch on April 8, 1988, alleging that he had performed her cataract surgery on the wrong eye. Her complaint also alleged that he had negligently implanted an experimental lens in her blind eye and that she had thereby incurred damage, that she was caused to undergo further medical treatment, and that she suffered great pain and suffering and severe emotional distress. In 1989, she amended her complaint to denote her claim against Dr. Torsch as one alleging medical malpractice and to include claims against Surgidev Corporation, the manufacturer of the lens implanted in her eye, and Wedowee Hospital, at whose facility the surgery was performed. In the amended complaint she alleged claims of fraud and outrageous conduct against the hospital. Both Mrs. McLeod and Dr. Torsch died before the trial.[1]
Before the trial, counsel for the estate of Mrs. McLeod and counsel for the estate of Dr. Torsch filed the following stipulation of facts:
 "1. Dr. Theodore A. Torsch came to Alabama in 1984 and opened an ophthalmology practice in Valley, Alabama.
 "2. On July 17, 1985, Dr. Torsch entered into a general ophthalmology service agreement with Health Care Management Corporation to provide ophthalmology services to Health Care Management Facilities. The Heflin [Cleburne County] Nursing Home and Wedowee Hospital were two of the facilities which Dr. Torsch agreed to provide services to under his contact with Health Care Management.
 "3. Lois McLeod in 1986 was 77 years old and was a resident of the Heflin Health Care Management nursing home in 1986.
 "4. Dr. Torsch saw Mrs. McLeod at the Heflin Nursing Home for the first time in March, 1986, when he was conducting a free eye clinic at the Heflin Nursing Home.
 "5. Medical records substantiate that Mrs. McLeod had been blind in her right eye since at least 1977.
 "6. Dr. Torsch recommended cataract surgery to Mrs. McLeod to be performed at the Wedowee Hospital on April 12, 1986.
 "7. Dr. Torsch had entered into a contract with Surgidev Corporation to become a clinical investigator with respect to implantation of [the] Surgidev Style 10 Anterior Chamber Lens. The arrangement between Surgidev and Dr. Torsch was such that Surgidev would supply to Dr. Torsch [lenses] for implantation in cataract patients' eyes. The lens to be implanted by Dr. Torsch was classified by the FDA as an investigational device. Such implantations were subject to regulations promulgated by the Food and Drug Administration with respect to implantation of investigational devices.
 "8. Once the contract was entered into between Dr. Torsch and Surgidev, Surgidev *Page 936 
became known under the regulations as the 'sponsor' of the investigation. 21 C.F.R. [Food and Drug Administration Regulations] provided in Part 50 that implantation of such investigational devices would be governed strictly in accordance with the rules and regulations promulgated by the Food and Drug Administration. . . .
 "9. The record reflects that on October 30, 1985, the Wedowee Hospital signed documents indicating that it had formed an Institutional Review Board [IRB] and that the regulations of Part 56, Part 50 and Part 813 of the Federal Regulations had been complied with. . . .
 "10. As sponsor of the project, Surgidev could not have shipped the investigational lens to Wedowee Hospital without receiving certification that an IRB had been established at the Wedowee Hospital and that the regulations promulgated by the Food and Drug Administration had been complied with. Surgidev entered into a consignment account agreement with Wedowee Hospital on November 20, 1985, to supply Surgidev [lenses] to said hospital.
 "11. On August 28, 1985, the minutes of the Wedowee Hospital reflect that Dr. Torsch entered into an agreement with the hospital to hold the clinic at the hospital one day a week and to do surgery once a month at the hospital. . . .
". . . .
 "14. Dr. Israel testified that if he had known it was an investigational device to be implanted by Dr. Torsch in the hospital he would never as Chairperson of the Wedowee Hospital Board have let the surgery be done at the hospital.
". . . .
 "16. Dr. Torsch scheduled Mrs. McLeod to have cataract surgery at the Wedowee Hospital on April 12, 1986. His operative notes indicate that he removed a senile cataract from her right eye and installed a Surgidev Style 10 Anterior Chamber investigative lens in her eye.
 "17. Dr. Torsch passed away on June 16, 1988, and Mrs. McLeod passed away on November 6, 1992.
 "18. The . . . records of the Heflin Nursing Home reflect numerous complaints made by Mrs. McLeod with respect to problems concerning her right eye after the surgery.
". . . .
 "21. Dr. John Godard, an ophthalmologist in Carrollton, Georgia, treated Mrs. McLeod for problems she was having with her right eye subsequent to surgery."
After a nonjury trial, Circuit Judge Howard Bryan issued the following order:
"FINAL ORDER
 "This having been the day heretofore set for trial of [the] medical malpractice action filed by Lois McLeod against Dr. Theodore A. Torsch and the Court having called the same for trial, the parties appeared represented by counsel and offered testimony concerning the allegations of the complaint.
 "Upon testimony taken in open court and the Court's review of the evidence submitted the Court makes the following findings:
 "This case is an extremely old case. The Court feels that it would be of benefit to recite for the record the history of this litigation as well as the Court's findings with respect to the evidence in this case.
 "This action was initially filed by Lois McLeod against Dr. Theodore Torsch and others in April of 1988. Attorney Boozer Downs filed a Motion to Dismiss on behalf of Dr. Torsch on June 10, 1988, in the Circuit Court of Chambers County, Alabama. On that same date a hearing was conducted in a similar case against Dr. Torsch being styled as Claude Willis v. Dr. Theodore Torsch. Mr. Downs made known to the Court that he was filing a limited appearance in that case on behalf of St. Paul Insurance Company to ensure that a default judgment was not entered against Dr. Torsch. On July 25, 1988, Attorney Gary A. Parker of the firm of Norman, Fitzpatrick, Wood, Wright and Williams filed a Notice of Appearance as counsel of record for Dr. Torsch; apparently, he had also been retained by St. Paul to appear for Dr. Torsch. On the *Page 937 
same date Attorney Parker filed a Suggestion of Death of Dr. Torsch representing that Dr. Torsch had died June 16, 1988.
 "During this pendency of this case, it was made known to the Court that there was a pending action for Declaratory Judgment filed in the Federal District Court for the Middle District of Alabama concerning insurance coverage questions between Dr. Torsch and his carrier St. Paul Insurance.
 "On February 21, 1989, Attorney Parker on behalf of Dr. Torsch filed a Motion to Stay or in the Alternative a Motion to Transfer Venue of the case. On February 24, 1989, the undersigned Judge transferred this action from the Circuit Court of Chambers County to the Circuit Court of Macon County based on the motion filed by Attorney Parker for Dr. Torsch.
 "Shortly after the case was transferred to the Circuit Court of Macon County, Attorney Parker filed a Motion to Withdraw as Attorney of Record for Dr. Torsch on the basis that Dr. Torsch had passed away and that Mrs. Theodore A. Torsch had been substituted as the proper party defendant in the case. Attorney Harry Cole filed an appearance on behalf of Mrs. Torsch as Executrix of the Estate of Dr. Torsch.
 "Subsequent thereto Mrs. Lois McLeod passed away on the 6th day of November, 1992. Her son, Don McLeod, was appointed as Administrator of her estate and substituted as the proper party plaintiff in this case.
 "The action now pending before the Court relates to Dr. Torsch's care of Lois McLeod as concerns medical care and treatment rendered by Dr. Torsch to Mrs. McLeod in 1986.
 "From the evidence, it appears that Dr. Torsch had contracted with Health Care Management in July, 1985, to provide services to the Health Care Management Medical facilities in east Alabama which included a nursing home located in Heflin, Alabama, and the Wedowee Hospital. As a part of said agreement Dr. Torsch apparently would go to the Heflin Nursing Home and offer eye examinations to patients located therein. Lois McLeod was one of these patients.
 "The records in evidence show that Mrs. McLeod had been blind in her right eye over 20 years before seeing Dr. Torsch in 1986. Medical records from the Bowdon Area Hospital, the testimony of Mrs. McLeod by her deposition and the medical records of an optometrist named Dr. Brown located in Carrollton, Georgia, substantiate the fact that Mrs. McLeod had no sight in her right eye.
 "After Dr. Torsch examined Mrs. McLeod, the family of Mrs. McLeod was informed that Dr. Torsch would perform cataract surgery upon her good eye, the left eye. When Mrs. McLeod underwent surgery at the Wedowee Hospital her right eye, the blind eye was operated upon. Dr. Torsch implanted a Surgidev Style 10 lens in Mrs. McLeod's eye. The lens was classified by the Food and Drug Administration as an investigational device and was to be implanted in a patient's eye only upon strict compliance with FDA mandates concerning the use of such a device upon human subjects.
 "The [intraocular] lens which was to be used by Dr. Torsch upon patients operated upon at Wedowee Hospital was a Surgidev style 10 [anterior] chamber lens. The lens had not received FDA approval for implantation in patients' eyes unless patients were fully informed that such lens was classified by the FDA as an investigational or experimental lens.
 "The Code of Federal Regulations provides strict guidelines with respect to implantation of such [an] experimental lens including, but not limited to securing an informed consent from individuals who would have such a lens implanted in their eye. This informed consent must meet the mandates of the Code of Federal Regulations as promulgated by the Food and Drug Administration.
 "As part of the Food and Drug Regulations the Wedowee Hospital was required pursuant to the Federal Regulations to establish an [Institutional] Review Board (IRB) to do the following: *Page 938 
 "1. To review the proposed experimental operations
 "2. To ensure that patients would receive informed consent before being subjected to such surgeries
 "3. To carry out the other mandates as promulgated by the Food and Drug Administration.
 "According to the Hospital Administrator Mitchell, Dr. Torsch failed to advise the hospital that the surgery he was performing was classified by the FDA as investigational. According to hospital officials, Dr. Torsch simply gave papers to hospital officials to sign and requested that they sign the same and he would 'do the rest.'
 "The evidence in this case is clear that Mrs. Lois McLeod had been blind in her right eye for in excess of 20 years prior to the time Dr. Torsch saw her for an examination in the nursing home in Heflin. Neither the records of the nursing home, the records produced from Dr. Torsch's records nor the hospital records reflect that Dr. Torsch ever determined what the visual acuity of Mrs. McLeod was in her right or her left eye. Nevertheless, Dr. Torsch recommended surgery to Mrs. McLeod which was to be performed at the Wedowee Hospital, a facility also managed by Health Care Management.
 "On the day of surgery, Mrs. McLeod was taken to the Wedowee Hospital by her daughter in law, Bonnie McLeod. According to testimony of Mrs. Lois McLeod she was never informed that the procedure she was to undergo was investigational or that the device to be implanted in her eye was an investigational device. She testified she would not have undergone this procedure had she known the same to be investigational. The consent which Mrs. McLeod did sign is highly questionable in that she appears to have signed that she had previously had surgery and desired an implant to be placed in her eye while another place on the form indicates that she wished to have the surgery and have an implant placed in her eye. Irrespective of the consents, the Court believes the testimony of Mrs. McLeod to be creditable in that she did not know the procedure she was to undergo was to be investigational and she did not receive informed consent [sic] to allow her to adequately weigh the risk she would be undertaking to go through such a procedure.
 "At the conclusion of the surgery, Mrs. McLeod informed her daughter-in-law, Bonnie, that Dr. Torsch had operated on the wrong eye. She stated that Dr. Torsch was going to 'surprise' her with vision in her right eye. It was the understanding that [sic] Mrs. McLeod immediately after surgery that he was to have operated on her sighted eye which was . . . her left eye. While the record is not clear as to whether Dr. Torsch operated on the 'wrong' eye the record is certainly clear that surgery on the right eye would have been of no visual benefit to Mrs. McLeod.
 "Following the surgery almost immediately Mrs. McLeod began to have problems with her right eye as reflected by the nursing home records. Dr. Torsch did not follow Mrs. McLeod at the nursing home to render treatment concerning the problems she was experiencing and an infection which apparently [was] in her right eye. The records from Dr. Torsch's office indicate that in June he was blaming an assistant for his failure to properly follow Mrs. McLeod. The Court finds Dr. Torsch's attempt to place the blame for his follow up care of Mrs. McLeod on a subordinate not to be creditable. The office note of June 18, 1986, concerning Dr. Torsch's treatment of Mrs. McLeod is so inconsistent that this Court finds it difficult to believe that a licensed ophthalmologist could have written such. The note first indicates he followed Mrs. McLeod regularly after surgery at the nursing home then blames his assistant for not following Mrs. McLeod. Of particular interest is Dr. Torsch's statement that Mrs. McLeod's vision in her blind eye had been 'improved remarkably' by the surgery. Dr. Godard's records indicate she was still blind in the right eye after the surgery. Mrs. McLeod was finally treated in Carrollton by Dr. Godard who treated her for the infection and performed subsequent to *Page 939 
[sic] outpatient surgery upon her to correct her problems.
 "The testimony and record [are] clear that Mrs. McLeod underwent extreme physical pain and suffering following the surgery of Dr. Torsch for an extended period of time.
 "Testimony was offered from a Board Certified ophthalmologist that Dr. Torsch had deviated from the accepted standard of care in his care and treatment of Mrs. McLeod. The degree of Dr. Torsch's deviation from the acceptable standard of care is so clear that even without the expert medical testimony offered a layman would have no difficulty in finding Dr. Torsch guilty of malpractice as alleged in the complaint.
 "The Court finds the conduct of Dr. Torsch with respect to his care and treatment of Mrs. McLeod to be reprehensible. Not only did he perform unnecessary surgery upon her but he also attempted to make her a part of an institutional investigation without her consent. At the time of the surgery Mrs. McLeod was 77 years old and in failing health according to records of previous hospitalizations at the Bowdon Area Hospital. It is clear that she did not have a long happy life ahead of her. As opposed to being allowed to live the remainder of her days in as much comfort as possible, Dr. Torsch took away from her much of the pleasure which she had remaining by performing unnecessary surgery upon her in an attempt to make her part of a medical investigation without her knowledge or consent.
 "Based upon the foregoing findings of fact and consideration of all testimony and evidence in this case, it is ORDERED, ADJUDGED AND DECREED by this Court that Don McLeod as Administrator of the Estate of Lois McLeod have and recover against the Estate of Dr. Theodore Torsch the sum of Three Million Dollars ($3,000,000.00)."
After the court made its ruling against Dr. Torsch, it dismissed Surgidev Corporation as a defendant, and the plaintiff's claims against Wedowee Hospital for damages for fraud and outrageous conduct were settled for $400,000. Dr. Torsch's estate filed a motion to alter, amend, or vacate the judgment, a motion for a new trial, and a motion for a remittitur and a set-off based on the pro tanto settlement. These motions were denied by operation of law. Rule 59.1, Ala.R.Civ.P.
The estate of Dr. Torsch argues on appeal that it is entitled, as a matter of law, to a set-off in the amount of the pro tanto settlement with the hospital and that the trial court erred in entering a final judgment assessing damages against the estate of Dr. Torsch. It argues that Dr. Torsch and the hospital should be considered joint tort-feasors that acted together to bring about one injury to Mrs. McLeod.
However, the hospital and Dr. Torsch cannot be considered joint tort-feasors, as a matter of law. See Green v. WedoweeHospital, 584 So.2d 1309 (Ala. 1991). The fact situation inGreen is almost identical to the one before us. The question in Green was whether the doctrine of res judicata would bar a fraud action against the hospital after the medical malpractice case was settled. This Court concluded that it would not be barred by the doctrine of res judicata, holding the fraud action to be separate and distinct from the medical malpractice action:
 "Theoretically, both suits arose out of the same occurrence — the cataract surgery performed at Wedowee [Hospital]. However, the medical malpractice suit against Dr. Torsch involved the manner in which Dr. Torsch performed the surgery and the ultimate result of that surgery. The fraud action against Wedowee [Hospital] involved its alleged failure to obtain FDA approval for performing the 'experimental surgery' and its alleged failure to inform Green of the 'experimental' nature of the surgery. The fraud action against Wedowee [Hospital] is separate and distinct from the medical malpractice action filed against Dr. Torsch for performing surgery on the wrong eye."
584 So.2d at 1316. It is settled law that a defendant in a tort case who is not a joint tort-feasor cannot, as a matter of law, claim a set-off for any amount received by the plaintiff in settlement with other defendants, *Page 940 
based on distinct acts of those defendants. Ex parte Martin,598 So.2d 1381, 1385 (Ala. 1992).
The estate of Dr. Torsch next contends that the trial court's finding in favor of the estate of Lois McLeod is not supported by the evidence. This case was presented to the trial judge on ore tenus evidence. The judgment of a trial court based on ore tenus evidence is presumed correct, and its findings "will not be disturbed on appeal unless they are palpably wrong, manifestly unjust, or without supporting evidence." McCoy v.McCoy, 549 So.2d 53, 57 (Ala. 1989); McCrary v. Butler,540 So.2d 736 (Ala. 1989); Jones v. Jones, 470 So.2d 1207
(Ala. 1985); Clark v. Albertville Nursing Home, Inc.,545 So.2d 9, 12-13 (Ala. 1989).
The only record before this Court is the clerk's record, which contains the stipulation of facts entered into by the parties and the trial court's findings of fact.[2] Nothing before us disputes the trial judge's findings of fact and conclusions of law. Therefore, we cannot say that the trial judge's findings are palpably wrong, manifestly unjust, or without supporting evidence.
The estate of Dr. Torsch contends, finally, that the $3 million damages award is excessive. It argues that neither the complaint nor the amended complaint stated a prayer for punitive damages, and, thus, that the plaintiff sought only compensatory damages. The trial court's judgment did not denominate any portion of the award as "punitive damages," although the trial judge stated in his findings of fact that the conduct of Dr. Torsch was "reprehensible"; thus, the award of damages is presumed to be compensatory. As to compensatory damages, we note the following:
 "This Court has held that 'the general rule is that compensatory damages are intended only to reimburse one for the loss suffered by reason of an injury to a person or property.' Sessions Co. v. Turner, 493 So.2d 1387, 1390 (Ala. 1986). It is equally well established that damages may not be awarded where they are remote or speculative. E.g., Cook v. Brown, 428 So.2d 59 (Ala.Civ.App. 1982)."
United Services Auto. Ass'n v. Wade, 544 So.2d 906, 912
(Ala. 1989).
The estate of Dr. Torsch argues that because compensatory damages are intended only to reimburse the plaintiff, the evidence in this case does not support the award of $3 million, because 1) the medical expenses incurred by Lois McLeod as a result of Dr. Torsch's actions were nominal; 2) at the time of the surgery Mrs. McLeod was 77 years old and confined to a nursing home, and thus suffered no loss of earnings or earning capacity as a result of the surgery; 3) for about 20 years Mrs. McLeod had been blind in the eye upon which Dr. Torsch operated, and, therefore, she suffered no loss of use of the eye; 4) evidence of physical and mental suffering was insufficient to substantiate such an award.
Having carefully considered the record, we find the compensatory award excessive, but we conclude that the judgment should be affirmed if the plaintiff accepts a remittitur of the compensatory damages award. While the Court cannot discount the physical pain and mental anguish associated with the experience of having the wrong eye operated on, it is a fact that Mrs. McLeod's medical expenses were nominal and that she bad no loss of earnings or earning capacity. We order a remittitur, on the authority of Sears Roebuck Co. v. Harris, 630 So.2d 1018
(Ala. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 2135,128 L.Ed.2d 865 (1994), in which this Court explained:
 "Subject to important state constitutional constraints, this Court has the authority under § 12-22-71, Ala. Code 1975, to determine the proper amount of recovery and to affirm the judgment, subject to the filing of a remittitur of the amount in excess of the proper amount, when the Court concludes that the judgment is excessive."
630 So.2d at 1033. For these reasons, we order a $1 million remittitur, to leave a $2 million compensatory damages award to the estate of Lois McLeod. *Page 941 
For the reasons stated above, the judgment of the trial court is affirmed, conditioned upon the plaintiff's filing the remittitur. If within 30 days after the date of this opinion, the estate of Lois McLeod files a remittitur, pursuant to §12-22-71, Ala. Code 1975, reducing the total judgment to $2 million as ordered herein, then the judgment is affirmed; otherwise, this judgment will stand reversed and the cause remanded for a new trial.
AFFIRMED CONDITIONALLY.
MADDOX, HOUSTON, KENNEDY, and COOK, JJ., concur.
[1] Dr. Torsch died June 16, 1988; Mrs. McLeod died November 6, 1992.
[2] The estate of Dr. Torsch did not furnish this Court a transcript of the trial.