THOMPSON, Presiding Judge.
Larry Magrinat appeals from a judgment of the Lee Circuit Court (“the trial court”) awarding him $42,000 in compensatory damages in his negligence action against Myra Maddox; Magrinat challenges the amount of damages awarded and contends that the trial court used the wrong measure of damages in determining that amount.
The evidence relevant to the issue on appeal indicates the following. Magrinat *1083 was injured on May 15, 2012, in Lee County when the automobile Maddox was driving collided with the rear of the pickup truck Magrinat was driving. Magrinat suffered injuries to his left ankle and his left arm in the accident. He received treatment for his injuries from a number of health-care providers, including having surgery at St. Vincent’s Hospital in Birmingham. Dr, David Shane Buggay, an orthopedic surgeon with OrthoSports Associates, LLC, performed the surgery. Dr. Buggay testified in his deposition that the surgery was required to repair the injury to Magrinat’s arm. Evidence indicated that St. Vincent’s Hospital charged Magrinat $17,467.54 for the surgery and that Dr. Buggay billed Magrinat $9,281 for his services. Dr. Buggay testified that OrthoUSA purchased Magrinat’s debt to Dr. Buggay for $3,200, meaning Dr. Bug-gay “wrote off’ the approximately $6,000 remaining on the total debt. . In his deposition, Dr. Buggay explained that OrthoU-SA
“is a company that will, for example, pay for the hospital bill or my bill or whoever’s bill it wants to kind of let them have the debt. You know, these are basically debt because they don’t .have insurance who are not likely to get paid. But [OrthoUSA will] pay you a portion of the money that they seem to think that, you know, you’re worth, I guess, and to allow you to do the surgery on someone who. doesn’t have insurance and then they take the risk that they won’t get paid in the future and then you get at least something for your work.”
Dr. Buggay also testified that the hospital would not have allowed him to perform the surgery on Magrinat because, he said, it was not an emergency. However, he said, OrthoUSA
“assisted us in getting this case done by putting their money out there in hopes they’d make a return on their investment, I guess. Hopefully it’s, you know, something reasonable. But they win some; they lose some. We understand that. And they allowed me to get [the surgery] done.”
Pursuant to his contract with OrthoUSA, Dr. Buggay said, he agreed not to “go after” Magrinat for the remainder of the debt and allowed OrthoUSA “to try to collect the rest,” that is, the balance of the $9,281 he billed Magrinat for his services.
In his trial brief, Magrinat argued to the trial court that the proper measure of damages in this case should include the amount of the charges for which he is responsible and not the amount that Dr. Buggay agreed to accept from OrthoUSA in selling the debt. In response, Maddox filed a “motion to strike asserted medical damages,” arguing that, under Alabama law, the measure of damages applicable in this case is the amount paid to a medical provider or to be paid to a medical provider.
On December 4, 2015, after a bench trial, the trial court entered a judgment in favor of Magrinat and awarded him $42,000. The trial court did not enter an order on Maddox’s motion to strike Magri-nat’s asserted medical damages. On December 7, 2015, Magrinat filed a motion for a ruling on the amount of medical damages to which he was entitled, i.e., whether he was entitled to receive the entire $9,281 that Dr. Buggay had billed him or only the $3,200 that Dr. Buggay had accepted from OrthoUSA in satisfaction of that bill. Magrinat also requested an itemization of the amount the trial court had awarded to him. On February 17, 2016, the trial court entered an order itemizing the medical damages it had awarded, indicating that the award included $3,200 for Dr. Buggáy’s services.
*1084 On January 15, 2016, before the trial court entered its order itemizing the damages it had awarded to him, Magrinat filed a notice of appeal to the Alabama Supreme Court;[1] that court transferred the appeal to this court on the ground that this court had appellate jurisdiction over the matter. See 12-3-10, Ala. Code 1975.
On appeal, Magrinat contends that the trial court applied an improper measure of damages in determining that he was entitled to only $3,200 in damages for the treatment he received from Dr. Buggay. Before addressing the merits of that issue, we must address Maddox’s contention that Magrinat failed to preserve the issue for appellate review. In her appellate brief, Maddox contends that the issue relates to the weight or the sufficiency of the evidence. She asserts that the trial court did not make any findings of fact and that, therefore, to preserve the issue for appellate review, Magrinat was required to raise the issue in a motion to alter, amend, or vacate the judgment, pursuant to Rule 59, Ala. R. Civ. P. New Props., L.L.C. v. Stewart, 905 So.2d 797, 801-02 (Ala.2004) (“[I]n a nonjury case in which the trial court makes no specific findings of fact, a party must move for a new trial or otherwise properly raise before the trial court the question relating to the sufficiency or weight of the evidence in order to preserve that question for appellate review.”). We disagree with Maddox’s assertion.
There is no dispute regarding the amount of the bill Dr. Buggay presented to Magrinat or the amount OrthoUSA paid to Dr. Buggay to “búy the debt” and satisfy Magrinat’s bill. Thus, the material facts relating to the issue are undisputed. Magrinat has framed the issue as whether the trial court applied the proper measure of damages to determine the amount to award him. The proper measure of damages to be applied in a given case is a question of law, not a question of fact. See Poffenbarger v. Merit Energy Co., 972 So.2d 792, 794-95 (Ala.2007). Accordingly, we conclude that the issue Magrinat has raised on appeal does not involve a question of the sufficiency or the weight of the evidence such that Magrinat was required to file a postjudgment motion raising the issue to preserve the issue for appellate review. Moreover, when the material facts are undisputed and the only issue presented involves a pure question of law, the appellate court’s review is de novo. Christian v. Murray, 915 So.2d 23, 25 (Ala.2005); Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala.2004).
Magrinat argues that he is entitled to recover the amount of Dr. Buggay’s bill for which he is liable, not simply the amount for which Dr. Buggay agreed to sell the debt to OrthoUSA. The issue *1085 appears to be a question of first impression in Alabama. Citing AMF Bowling Centers, Inc. v. Dearman, 683 So.2d 436 (Ala.Civ.App.1995), and other cases, Maddox counters that Alabama law provides that the proper measure of damages to be applied in this case is the amount actually paid to Dr. Buggay. She also relies on Crocker v. Grammer, 87 So.3d 1190 (Ala. Civ.App.2011), and McCormick v. Bunting, 99 So.3d 1248 (Ala.Civ.App.2012), in which this court held that, in enacting § 12-21-45, Aa.Code 1975,[2] the legislature modified the common-law collateral-source rule in order to allow Alabama juries to determine whether an award of damages should be reduced as the result of payments of medical and hospital expenses made by third parties on behalf of a plaintiff. The common-law collateral-source rule provided “that an amount of damages [was] not decreased by benefits received by a plaintiff [in a personal-injury action] from a source wholly collateral to and independent of the wrongdoer, including services provided by the state at government expense or decreased by institutionalization at government expense.” Williston v. Ard, 611 So.2d 274, 278 (Ala.1992). Pursuant to Crocker and McCormick, Maddox says, the trial court did not err in awarding Magrinat $3,200 for the treatment Dr, Buggay provided to him because, she says, the trial court determined that the proper measure of damages was “the collateral source ‘lower’ amount.”
Maddox’s argument is based on an incorrect premise. There is no evidence indicating that OrthoUSA purchased Magri-nat’s debt to Dr. Buggay on behalf of Magrinat or-to extinguish or satisfy Magri-nat’s debt, as would have been the case if Dr. Buggay had accepted a lower payment for his services from an insurance company or an agency like Medicare or Medicaid. Instead, the evidence indicates that Dr. Buggay sold Magrinat’s debt to Or-thoUSA in the hope of receiving some payment for treatment provided to an uninsured patient while allowing OrthoU-SA to bear the risk of collecting the debt. In other words, even though Dr. Buggay sold the debt for less than the total amount of the bill, Magrinat still remains liable for the entire bill. He is simply indebted to OrthoUSA rather than Dr. Buggay.
“[T]he general rule regarding the recovery of medical expenses, including hospital expenses resulting from personal injuries, is that a plaintiff may recover those medical expenses that are reasonable and necessary.” Ex parte Hicks, 537 So.2d 486, 489-90 (Ala.1988); Hooks v. Pettaway, 142 So.3d 1151, 1158 (Ala.Civ. App.2013). “This Court has consistently held that ‘Compensatory damages are designed to make the plaintiff whole by reimbursing him or her for the loss or harm suffered.’ Ex parte Moebes, 709 So.2d 477, 478 (Ala.1997); see Torsch v. McLeod, 665 So.2d 934, 940 (Ala.1995).” Ex parte Goldsen, 783 So.2d 53, 56 (Ala.2000); see also Ex parte S & M, LLC, 120 So.3d 509, 510 (Ala.2012).
Research has revealed no Alabama cases on point. In Katiuzhinsky v. Perry, 152 Cal.App.4th 1288, 62 Cal.Rptr.3d 309 (2007), a California appellate court consid *1086 ered the issue of whether the plaintiffs were entitled to present evidence of the full amount of the bill they had received from a medical provider who had sold to a third party the medical lien it held against any recovery the plaintiffs might recover in their personal-injury actions against the tortfeasor. The medical.provider sold the lien at a discount. As in this case, the medical provider wrote off the balance of the debt, but the plaintiff remained liable to the third-party purchaser of the lien for the full amount of their medical bill. 152 Cal.App.4th at 1291, 62 Cal.Rptr.3d at 310. The California appellate court reversed the trial court’s ruling that the plaintiffs could not present evidence of the full amount of the medical provider’s bill to them, concluding that “.[t]he intervention of a third party in purchasing a medical lien does not prevent a plaintiff from recovering -the amounts billed by the medical provider for care and treatment, as long as the plaintiff legitimately incurs those expenses and remains liable for their payment.” Id. The Katiuzhinsky court explained that, although the medical provider had been willing to accept a discounted rate- for its services, the plaintiffs remained fully liable for the amount of the medical provider’s charges. After noting that a damages award should not place a tort plaintiff in a better position than if the wrong had not been done, the Katiuzhinsky court wrote:
“Under the trial court’s ruling, plaintiffs are placed in a worse position than had the tort not been committed. Despite the fact that plaintiffs are liable for the full amount of the medical bills, the tort-feasor is answerable only for a discounted rate paid by a bill collector that bought the lien from a health care- provider, The result is that plaintiffs are undercompensated and the tortfeasor receives a windfall.”
152 Cal.App.4th at 1296, 62 Cal.Rptr.3d at 314-15.
We agree with the California appellate court’s rationale. - The only way to fully compensate Magrinat for the loss he suffered as a result of the accident is to allow him to recover the amount for which he is liable and not limit the recovery to the amount for which Dr. Buggay agreed to sell the debt. We note that, on appeal, Maddox does not contend that Dr, Bug-gay’s charges for the treatment he provided to Magrinat were not necessary or reasonable.
Ip. her bpief submitted to this court, Maddox contends that the judgment is due to be affirmed because, she says, there is no evidence in the record that OrthoUSA intended to collect from Magrinat the debt it purchased from Dr. Buggay. We find that argument to be without merit. Dr. Buggay testified that OrthoUSA purchases medical debt at a discounted rate in the hope of recovering the full amount, so that, as Dr. Buggay put it, OrthoUSA would receive a “return on.its investment.” The evidence in this case indicates that Magri-nat owes OrthoUSA $9,281. There is no evidence to suggest that OrthoUSA would not attempt to collect that amount. We find no logical reason to require a plaintiff to present evidence. that the- person or entity to whom he or she owes a debt, for whatever reason, intends, to actually collect that debt before damages can be awarded based on the amount of that debt.
For the reasons set forth above, we now hold that, when a third party purchases a medical provider’s debt but the injured party who was treated remains responsible and liable for that debt in full, the injured party is entitled to recover as damages the amount the injured party owes, to the extent it is reasonable and necessary; the injured party is not limited to recovering the amount the medical provider agreed to accept from the third- *1087 party purchaser of that debt. Because Magrinat incurred a debt of $9,281 for the treatment he received from Dr. Buggay and remains liable for that amount, the trial court erred in awarding him only $3,200 for that treatment. Accordingly, the judgment awarding Magrinat a total of $42,000 in compensatory damages is reversed, and the cause is remanded for the trial court to apply the proper measure of damages and to recalculate the damages award in light of this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, THOMAS, and MOORE, JJ., concur.
DONALDSON, J., dissents, with writing.

. We note that January 15, 2016, was the 42d day after the entry of the judgment. See Rule 4(a)(1), Ala. R.App. P. (designating the time in which to file a notice of appeal). The parties do not raise the issue of whether the motion to itemize damages constituted a post-judgment motion for purposes of tolling the time in which to appeal. Because the notice of appeal was filed within 42 days of the entry of the judgment, the appeal is timely, regardless of whether the motion to itemize damages tolled the time in which to appeal. However, we note that in the motion to itemize damages, Magrinat asserted that, if the trial court had reduced his special damages based on Maddox’s arguments, discussed infra, it had “erred in doing so” and had deprived him of the amount of special damages to which he was entitled. We conclude that the substance of the motion, which apprised the trial court of the asserted error, was sufficient to constitute a motion to alter, amend, or vacate the judgment pursuant to Rule 59, Ala. R. Civ. P. Accordingly, we deem that the notice of appeal was held in abeyance until the trial court ruled on the postjudgment motion. See Rule 4(a)(5), Ala. R.App. P.

, Section 12-2 l-45(a) provides:
“In all civil actions where damages for any medical or hospital expenses are claimed and are legally recoverable for personal injury or death, evidence that the plaintiff’s medical or hospital expenses have been or will be paid or reimbursed shall be admissible as competent evidence. In such actions upon admission of evidence respecting reimbursement or payment of medical or hospital expenses, the plaintiff shall be entitled to introduce evidence of the cost of obtaining reimbursement or payment of medical or hospital expenses.”