In 1997, Pamela Ann Lowry filed claims against the estate of W.E. Garrett, based on allegations of intentional infliction of emotional distress, invasion of privacy, the tort of outrage, and negligent infliction of emotional distress. Anna M. Garrett, as the executrix of the estate of W.E. Garrett (hereinafter "the Garrett estate"), denied Lowry's claims and then filed an action seeking a judgment declaring that Lowry's claims were invalid.
The case was set on the nonjury docket twice in 1999. In January 2000, Lowry obtained new counsel; her new attorney moved for a jury trial. The Garrett estate objected to that motion. The trial court denied Lowry's motion for a jury trial.
On June 14, 2000, the trial court conducted a bench trial, hearing ore tenus evidence. On July 14, 2000, the court entered a judgment finding in favor of Lowry on her invasion-of-privacy claim and in favor of the Garrett estate on all other claims. The trial court held that Lowry was entitled to $25,000 in damages, but that because Lowry had entered into a pro tanto settlement with several joint tortfeasors, that settlement fully offset the damages award. Lowry appealed. The Supreme Court of Alabama transferred the appeal to this court, pursuant to § 12-2-7, Ala. Code 1975.
Lowry thus prevailed on the issue of liability. A party who prevails in the trial court may appeal only on the issue of the adequacy of damages or as to other issues affecting the amount of damages awarded. Ex parteVincent, *Page 1121 770 So.2d 92 (Ala. 1999); Ex parte Weyerhaeuser Co.,702 So.2d 1227 (Ala. 1996); Holloway v. Henderson Lumber Co., 203 Ala. 246,82 So. 344 (1919); Dare Prods., Inc. v. State, 574 So.2d 847
(Ala.Civ.App. 1990). Two of the issues Lowry raises on appeal relate to the amount of damages awarded: she argues that the $25,000 damages award was inadequate and that the trial court erred in ordering a set-off of that damages award. However, Lowry also purports to raise a third issue in her brief on appeal: whether the trial court erred in denying her Rule 39(b), Ala.R.Civ.P., request for a jury trial. Lowry makes no argument that the denial of her request for a jury trial affected the award of damages; therefore, she may not raise that issue on appeal. SeeEx parte Weyerhaeuser Co., supra (holding that this court erred in considering the prevailing party's appeal of the trial court's denial of her challenges for cause regarding three prospective jurors). Therefore, this court will not address Lowry's argument pertaining to her request for a jury trial.
 I.
Lowry argues that the trial court's assessment of damages was "not reasonable," given the evidence she presented. The trial court found in favor of Lowry on her invasion-of-privacy claim.
 "It is generally accepted that invasion of privacy consists of four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use. Norris v. Moskin Stores, Inc., 272 Ala. 174, 132 So.2d 321 (1961)."
Johnston v. Fuller, 706 So.2d 700, 701 (Ala. 1997). We read Lowry's claim against the Garrett estate to allege an intrusion by W.E. Garrett into her physical solitude or seclusion.
The record indicates that in March 1997, W.E. Garrett and Anna Garrett traveled to San Diego, California, at the request of Lindsey Morris, Anna Garrett's brother. Morris had been jailed in California on charges of child molestation. Morris's attorney, a California public defender named William Saunders, voluntarily gave W.E. Garrett access to Morris's files; W.E. Garrett was a retired Alabama attorney. That file contained a confidential statement given by Lowry, Morris's stepdaughter, to the California authorities prosecuting Morris. In her confidential statement, Lowry alleged that Morris had sexually abused her throughout her childhood.
Before returning to Alabama, W.E. Garrett telephoned Lowry. The length and tenor of that telephone conversation was disputed at trial, but it is undisputed that W.E. Garrett informed Lowry that he had been given access to her confidential statement and that he knew she had been molested as a child. After that telephone conversation, the Garretts returned to Alabama, and W.E. Garrett died a short time later.
Lowry alleged that she had suffered a significant psychological injury as a result of her telephone conversation with W.E. Garrett, and she presented evidence to support that allegation. In its judgment, the trial court stated that it was "not satisfied that the psychological injury to Lowry is of such a severe degree." The trial court set forth a number of reasons, including its own observation of Lowry while she testified, to explain its finding on that issue. *Page 1122 
The findings and determinations of a trial court, where it has heard ore tenus evidence, are entitled to a presumption of correctness, and they will not be reversed on appeal absent a showing that they are plainly and palpably wrong. Alverson v. Trans-Cycle Indus., Inc.,726 So.2d 670 (Ala.Civ.App. 1998); Acuff v. Fox, 597 So.2d 232
(Ala.Civ.App. 1992); Underwood v. Hall, 572 So.2d 490 (Ala.Civ.App. 1990). The damages awarded in an action of this nature are discretionary. Given the evidence in the record and the court's findings based on that evidence, we cannot say the trial court's damages award was inadequate or that it amounted to an abuse of discretion. We affirm as to this issue.
 II.
Lowry also argues that the trial court erred in allowing a settlement to offset her award of damages. In a California action, Lowry sued Saunders and others who had been involved in allowing W.E. Garrett to obtain access to her confidential statement. Those California defendants and Lowry had entered into a settlement agreement in which Lowry released them from further liability in exchange for $108,000.
The trial court determined that Lowry would have been entitled to $25,000 for her injuries caused by the release of the confidential statement to W.E. Garrett, but that the Garrett estate was entitled to a set-off of the amount Lowry had received from her settlement with the California defendants. Therefore, the trial court determined that Lowry was not entitled to recover damages from the Garrett estate. See Ex parteGoldsen, 783 So.2d 53 (Ala. 2000).
In holding that a nonsettling tortfeasor is entitled to have the damages award against it offset by any amount of proceeds the plaintiff has recovered through a settlement with a joint tortfeasor, our supreme court quoted the rule stated in Restatement (Second) of Torts, § 885(3) (1979):
 "`A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment.'"
Ex parte Goldsen, 783 So.2d at 55.
Lowry argues that W.E. Garrett, or his estate, and the California defendants are not joint tortfeasors and, therefore, that the Garrett estate cannot claim a set-off of the amount Lowry received in her settlement with the California defendants. See Ex parte Martin,598 So.2d 1381 (Ala. 1992).
"Joint tortfeasors" are "those who act together in committing wrong, or whose acts if independent of each other, unite in causing [a] single injury." Black's Law Dictionary 839 (6th ed. 1990). Our supreme court has defined "joint tortfeasors" as "`two or more persons who owe to another the same duty and whose common neglect of that duty results in injury to such other person.'" Lewis v. Fraunfelder, [Ms. 1982085, Oct. 27, 2000] ___ So.2d ___, (Ala. 2000), quoting Sobotta v. Vogel,37 Mich. App. 59, 61, 194 N.W.2d 564, 565 (1971).
Lowry prevailed only on her invasion-of-privacy claim. The trial court determined that the California defendants were joint tortfeasors with regard to that claim. In discussing the tort of invasion of privacy as it pertains to an invasion into personal solitude or seclusion, our supreme court has stated: *Page 1123 
 "In Phillips v. Smalley Maintenance Services, Inc., 435 So.2d 705 (Ala. 1983), this Court adopted the Restatement (Second) of Torts definition of the wrongful-intrusion branch of the invasion-of-privacy tort:
 "`One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'
 "Restatement (Second) of Torts § 652B (1977). Comment c to § 652B states in part: `The defendant is subject to liability under the rule stated in this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs.' The wrongful intrusion may be by physical intrusion into a place where the plaintiff has secluded himself, by discovering the plaintiff's private affairs through wiretapping or eavesdropping, or by some investigation into the plaintiff's private concerns, such as opening private mail or examining a private bank account. Restatement (Second) of Torts
§ 652B cmt. b; see Vernars v. Young, 539 F.2d 966
(3d Cir. 1976) (holding that invasion of privacy occurred when mail addressed to plaintiff was opened by defendant without plaintiff's consent); see generally, W. Page Keeton, et al., Prosser and Keeton on the Law of Torts, § 117, at 854-55 (5th ed. 1984); 62 Am. Jur. 2d Privacy §§ 51-57 (1990). Further, if the means of gathering the information are excessively objectionable and improper, a wrongful intrusion may occur. See Hogin v. Cottingham, 533 So.2d 525 (Ala. 1988) (wrongful intrusion occurs when there has been abrupt, offensive, and objectionable prying into information that is entitled to be private)."
Johnston v. Fuller, 706 So.2d at 702.
Our supreme court has held that two defendants were not joint tortfeasors where the acts of the two defendants "did not combine to cause any one injury." State Farm Fire Cas. Co. v. Slade, 747 So.2d 293,325 (Ala. 1999).
 "`[A]s a matter of law, [defendants who are not joint tortfeasors and] whose acts do not combine to cause one single injury cannot claim a set-off . . . [as to] any amount received by the plaintiff in settlement with other [defendants who are not joint tortfeasors] based on distinct acts of those defendants.' Ex parte Martin, 598 So.2d 1381, 1385 (Ala. 1992); see, also, Hall v. Seaboard Air Line R.R., 211 Ala. 602, 604, 100 So. 890, 891 (1924) (`"where the [negligent acts] of two or more persons concur in producing a single, indivisible injury, then such persons are jointly and severally liable"')."
Id. at 324-25.
The trial court found that Lowry was entitled to damages for the trauma and injury she suffered "when she learned in the telephone call from [W.E.] Garrett that [her] confidential statements had been released without her consent and were no longer within her ability to control." As the trial court stated in its findings of fact, Lowry's own evidence was that she would not have been injured if she had never learned that her confidential statement had been released without her consent. We agree with the trial court's determination that the acts of the California defendants and W.E. Garrett combined to produce a single, indivisible injury. See Lewis v. Fraunfelder, supra; State Farm Fire Cas. Co. v. Slade, supra. Therefore, we conclude that the trial court correctly determined that the *Page 1124 
Garrett estate was entitled to a set-off of the settlement proceeds against the damages award.
 III.
The judgment of the trial court is affirmed.
AFFIRMED.
Yates, P.J., and Crawley and Pittman, JJ., concur.
Murdock, J., concurs in the result.