Facts and Procedural History
Francina Morales was injured in June 2003 when she was struck by an automobile driven by Robert Shorter. She sued Shorter, claiming damages in the amount of $175,000. During the course of the litigation, Shorter died, and Luneal Barnett, as the administrator of Shorter's estate, was substituted as the defendant. Morales received $20,000 from her insurer, GEICO, under the underinsured-motorist provisions of her automobile-liability insurance policy. At trial, the jury awarded Morales damages of $35,000, and Barnett moved for a set-off of $20,000 to account for the insurance proceeds Morales had already received from GEICO. The trial court denied the motion and entered a judgment for Morales in the amount of $35,000. Barnett moved for the trial court to reconsider its ruling denying the set-off, and the trial court then amended its judgment to reduce the amount of the judgment by the $20,000 insurance payment. In doing so, the trial court relied on Batchelor v. Brye, 421 So.2d 1267
(Ala.Civ.App. 1982), for its holding that a jury verdict against a defendant tortfeasor is subject to a set-off in the amount of the underinsured-motorist policy proceeds paid to the plaintiff.
The Court of Civil Appeals reversed the trial court's judgment, limiting the holding in Batchelor to cases involving joint tortfeasors. Morales v. Barnett, *Page 731 978 So.2d 722 (Ala.Civ.App. 2006). The Court of Civil Appeals held that the collateral-source rule prohibits the trial court from reducing the damages recoverable from Shorter's estate by the amount of the underinsured-motorist policy proceeds Morales received. We granted Barnett's petition for the writ of certiorari to consider this holding.
 Standard of Review
"Where the facts are not in dispute and we are presented with a pure question of law, as here, this Court's review is de novo."Christian v. Murray, 915 So.2d 23, 25 (Ala. 2005) (citing State v. American Tobacco Co., 772 So.2d 417,419 (Ala. 2000), Ex parte Graham, 702 So.2d 1215, 1221
(Ala. 1997), and Beavers v. County of Walker,645 So.2d 1365, 1372 (Ala. 1994)).
 Analysis
Under the collateral-source rule, "an amount of damages is not decreased by benefits received by a plaintiff from a source wholly collateral to and independent of the wrongdoer. . . ."Williston v. Ard, 611 So.2d 274, 278 (Ala. 1992). In this case, the Court must determine whether uninsured/underinsured-motorist ("UM") insurance[1] benefits are a collateral source for the purposes of the collateral-source rule.
Barnett does not appear to question the applicability of the collateral-source rule generally; instead, she argues that the collateral-source rule does not apply in cases involving UM insurance. For this argument, Barnett cites the Court of Civil Appeals' decision in Batchelor v. Brye, supra. She also argues that the "unique" and "hybrid" nature of UM insurance militates against applying the collateral-source rule in a case involving UM insurance.
Barnett first argues that the Court of Civil Appeals erred in distinguishing the present case from Batchelor v.Brye, supra. In Batchelor, the father of a boy killed in an automobile accident sued his UM insurance carrier and two joint tortfeasors, one of whom was insured and the other not. The plaintiff and the insurance carrier settled the UM claim for $10,000. The plaintiff then proceeded to trial against the two joint tortfeasors. The jury returned a verdict against the joint tortfeasors, assessing the plaintiffs damages at $30,000. The insured defendant paid $20,000 into the court and then moved to have the $30,000 judgment ordered satisfied. The trial court granted the motion, and the Court of Civil Appeals affirmed, concluding:
 "The plaintiffs insurer . . . stood in the shoes of the uninsured motorist . . . as a source of payment to the plaintiff. . . . Though the jury, without knowledge of the plaintiffs settlement with [his insurer], later found the plaintiffs damages to be $30,000, the plaintiff had already received one-third of that amount from his insurer due to the liability of [the uninsured motorist]."
Batchelor, 421 So.2d at 1268-69. The court further noted that "while uninsured motorist payments may be used to partially meet the plaintiffs measure of damages, the plaintiff is never entitled to recover from any source more than the actual measure of damages." 421 So.2d at 1269. The court inBatchelor concluded that "[t]he goal of uninsured motorist coverage is to make the plaintiff whole but not to allow double recovery." 421 So.2d at 1269. *Page 732 
For this reason, the court reduced the plaintiffs damages by virtue of the settlement with the UM insurance carrier and allowed "the $10,000 received by the plaintiff under the uninsured motorist provision of his policy [to] be used to partially satisfy the $30,000 judgment." 421 So.2d at 1268. We agree with Barnett that Batchelor is largely on point.[2]
The court in Batchelor did not discuss our cases applying the collateral-source rule, but "[i]t is well settled that the amount paid by an insurer to a plaintiff for damage to his vehicle does not affect his measure of recovery and that evidence of an insurance payment is not ordinarily admissible."Jones v. Carter, 646 So.2d 651, 653 (Ala. 1994). "The collateral source doctrine . . . provides that damages recoverable for a wrong are not diminished because the injured party has been wholly or partially indemnified or compensated for his loss by insurance effected by him and to which the wrongdoer did not contribute. . . .'" Mitchell v.Moore, 406 So.2d 347, 351 (Ala. 1981) (quoting Powellv. Brady, 30 Colo.App. 406, 414, 496 P.2d 328, 332-33
(1972)). Batchelor appears to run afoul of the collateral-source rule. Thus, we must either overrule it or hold that the collateral-source rule does not apply to UM insurance benefits.
Barnett argues that the collateral-source rule should not apply to UM insurance benefits because its application would allow Morales to receive a double recovery and to be in a better position following the accident than if the accident had not occurred. Alabama law generally bars double recoveries, and, although "`a party is entitled to full compensation for his injuries,'" Wilbourn v. Ray, 603 So.2d 969, 972
(Ala. 1992) (quoting McClendon v. City of Boaz,395 So.2d 21, 26 (Ala. 1981)), he "`can gain but one satisfaction.'"Lee L. Saad Constr. Co. v. DPF Architects, P.C.,851 So.2d 507, 521 (Ala. 2002) (quoting Mobile Ins., Inc. v.Smith, 441 So.2d 894, 896 (Ala. 1983)). Thus, according to Barnett, the trial court correctly set off the $20,000 that Morales's UM insurance carrier paid to Morales pursuant to her UM insurance policy, and the judgment was satisfied when Barnett's insurer paid the remaining $15,000 of the judgment.
The rule against double recoveries bars a plaintiff from recovering more than her full damages when payments have been made by a tortfeasor or on behalf of a tortfeasor. 4 Restatement (Second) of Torts § 920A(1) (1972). "The collateral-source rule is an exception to the general rule of damages preventing a double recovery by an injured party."Wills v. Foster, 372 Ill.App.3d 670, 673,867 N.E.2d 1223, 1226, 311 Ill.Dec. 237, 240 (2007); see also HardawayMgmt. Co. v. Southerland, 977 S.W.2d 910, 918 (Ky. *Page 733 
1998) ("There is a strong public policy in this Commonwealth against double recovery for the same elements of loss. An exception, of course, is the collateral source rule that `damages recoverable for a wrong are not diminished by the fact that the injured party has been wholly or partly indemnified by insurance (to whose procurement the wrongdoer did not contribute).'" (emphasis omitted)). This Court has stated that "the amount paid by an insurer to a plaintiff for damage to his vehicle does not affect his measure of recovery. . . ." Jones v. Carter, 646 So.2d 651, 653
(Ala. 1994); see also Jones v. Crawford, 361 So.2d 518, 522
(Ala. 1978) ("The courts of this state have held many times that what has occurred between insurer and insured is of no concern to the defendant — that the sum received from insurance cannot be shown in mitigation of damages for the injury." (footnote omitted)); Sturdivant v. Crawford,240 Ala. 383, 385, 199 So. 537, 538 (1940) ("The amount paid by the insurance company [for the damage to the plaintiffs car] does not even affect the measure of recovery. The insurance of the property is a mere indemnity, and insurer and insured are regarded as one person. The mere fact that the insurer had paid the insured cannot affect the action against the wrongdoer who has destroyed or injured the property, the subject of the insurance."). Thus, the collateral-source rule generally precludes the trial court from deducting from the damages award the benefits the plaintiff received from an insurance policy, notwithstanding the fact that the plaintiff may receive what appears to be a "double recovery."
Barnett argues that we should follow Haynes v. Yale-NewHaven Hospital, 243 Conn. 17, 27, 699 A.2d 964, 969
(1997), which held that "for the particular purpose of characterizing underinsured motorist payments, the relationship . . . between the underinsured carrier and the defendant may be viewed as analogous to that of joint tortfeasors, and thus that the general tort rule precluding double recovery from joint tortfeasors should apply." (Footnote omitted.) Under Alabama law, among defendants jointly liable for the injury to the plaintiff, "where one tortfeasor settles, we have allowed the nonsettling tortfeasor to have the jury award reduced by the amount of any pro tanto settlement." Ex parte Goldsen,783 So.2d 53, 56 (Ala. 2000). On the other hand, where the tortfeasors are not jointly liable, the nonsettling party "cannot . . . claim a set-off for any amount received by the plaintiff in settlement with other defendants, based on the distinct acts of those defendants." Torsch v. McLeod,665 So.2d 934, 939-40 (Ala. 1995). The issue, then, is whether, under Alabama law, a UM insurance carrier may be characterized as a joint tortfeasor along with the actual tortfeasor.
"`Joint tortfeasors' are `those who act together in committing wrong, or whose acts if independent of each other, unite in causing [a] single injury.'" Lowry v. Garrett,792 So.2d 1119, 1122 (Ala.Civ.App. 2001) (quoting Black's LawDictionary 839 (6th ed. 1990)). "If damage results from concurrent, wrongful acts of two or more tort-feasors, they may be sued jointly or severally and the act of each may be counted on as the proximate cause of the injury. . . ." Butler v.Olshan, 280 Ala. 181, 192, 191 So.2d 7, 17 (1966). "The policy in favor of the pro tanto satisfaction for joint tort-feasors is well established in Alabama law upon the theory that the right of action against joint tort-feasors is one and indivisible." Hardman v. Freeman, 337 So.2d 325, 326
(Ala. 1976) (footnote omitted).
In this case, however, it is clear that Morales's UM insurance carrier committed *Page 734 
no wrongful act that united with Barnett's negligence to cause a single injury, and her UM insurance carrier, therefore, was not a joint tortfeasor. Instead, a UM insurance carrier's liability to the insured is based solely on its contractual obligations as laid out in the policy. Continental Nat'lIndent. Co. v. Fields, 926 So.2d 1033, 1037 (Ala. 2005) (holding that the cause of action for recovery under the uninsured-motorist statute is contractual in nature);Howard v. Alabama Farm Bureau Mut. Cos. Ins. Co.,373 So.2d 628, 629 (Ala. 1979) ("An action based on the uninsured motorist provisions of a liability policy is excontractu in nature."). Although the tortfeasor's liability triggers the insurer's obligation to pay, that liability serves only to establish that the insured "is entitled to recovery under the terms of the policy."Howard, 373 So.2d at 629.[3] We therefore decline to treat a UM insurer as a joint tortfeasor.
Barnett argues that the UM insurance carrier stands in the shoes of the tortfeasor as a "surrogate excess insurer" of the underinsured motorist, so that "both the tortfeasor and the [UM] carriers' payments should be considered made on behalf of the tortfeasor towards satisfaction of the judgment. . . ." Barnett's reply brief at 7, Barnett's brief at 11. Although we recognize that the UM insurance carrier's liability is triggered when the plaintiff establishes the tortfeasor's liability, we disagree that this means that any payment made by the insurer is made "on behalf of the tortfeasor."
Section 32-7-23, Ala. Code 1975, which requires an automobile liability insurance policy to make available UM coverage, states that this coverage is "for the protection of persons insured thereunder. . . ." That the UM insurer does not pay the insured "on the behalf of the tortfeasor" is evidenced by the fact that it is the insured who pays the premiums for the UM coverage, not the uninsured-motorist tortfeasor. The benefits "did not come from the defendant or a person acting for him."Restatement (Second) of Torts § 920A cmt. b.;see also State Farm Mut. Auto. Ins. Co. v. Board of Regentsof Univ. Sys., 226 Ga. 310, 311, 174 S.E.2d 920, 922
(1970) ("[P]ayments made by the insurance company under the policy are not payments made by or on behalf of the uninsured motorist-tortfeasor. . . ."); — Bradley v. HA ManoshCorp., 157 Vt. 477, 484-85, 601 A.2d 978, 983 (1991) ("[T]he UM, carrier has a status different from that of insurance carriers who represent other tortfeasors. Their contractual obligation is to persons allegedly at fault, whereas the contractual obligation of the UM carrier is to the injured party."), Instead, the UM insurance benefits are the result of the plaintiffs decision to pay the premiums for UM insurance.
The UM insurer is not in privity with the tortfeasor.Haynes, 243 Conn. at 25, 699 A.2d at 968 ("We recognize that an *Page 735 
underinsured motorist carrier `is not the alter ego of the tortfeasor and . . . they do not share the same legal [status]. . . .' The fact that the carrier and the tortfeasor do not share a complete legal identity, and thus are not in privity with each other, does not automatically resolve the narrower question of how payments made pursuant to an underinsured motorist policy should be treated." (quotingMazziotti v. Allstate Ins. Co., 240 Conn. 799, 817,695 A.2d 1010, 1019 (1997))). Further, the tortfeasor could not demand contribution from the UM insurer if he had paid a judgment and the insurer had not. See Harleysville Mut.Ins. Co. v. Nationwide Mut. Ins. Co., 789 F.2d 272, 275
(4th Cir. 1986) ("Nationwide's contractual and statutory obligation is to satisfy a judgment its insured [Hollingsworth] may obtain against Doe. It has no obligation to satisfy any judgment others may obtain against Doe. Nothing in the Virginia statute or in the policy may be construed to give that effect. For exactly the same reason that Nationwide is liable to Hollingsworth, it is not liable to Baker or LaValleys or to Harleysville [Mutual Insurance Co.], their insure[r], for any right of contribution they may have against Doe. It simply has no contractual or statutory obligation to this effect. Neither does the common law create any such obligation.").
Barnett argues nonetheless that, because UM insurance has a "unique" and "hybrid" nature in relation to other forms of insurance, the collateral-source rule does not apply in cases involving UM insurance. She bases this argument on the fact that the tortfeasor must be shown by the insured to be both liable and uninsured before the UM insurance carrier has any duty to pay UM benefits. However, the requirement that the insured establish the liability of an uninsured motorist simply concerns whether the insured is entitled to recover under the UM insurance policy. Howard, 373 So.2d at 629. As noted above, the insurer's duty to pay arises from the insurance contract, and, like any insurance contract, the insurer has no duty to pay a noncovered claim. Barnett in her reply brief says as much, noting that under first-party insurance policies, "all the insured must do is show an event or peril within the policy coverage." Barnett's reply brief at 9. The same is true for UM insurance; establishing that an uninsured motorist is liable serves to show that the peril was within the coverage of the policy.
For the foregoing reasons, we hold that UM insurance benefits are a collateral source that may not be used to diminish an award in favor of the plaintiff. To the extent that it is inconsistent with this opinion, we overrule Batchelor v.Brye, 421 So.2d 1267 (Ala.Civ.App. 1982). In doing so, we note that the majority of jurisdictions that have addressed the issue agree that the collateral-source rule applies to UM insurance benefits paid to the insured. See InternationalSales-Rentals Leasing Co. v. Nearhoof, 263 So.2d 569, 571
(Fla. 1972) (holding that neither the UM statute, caselaw, nor the contract in the case allowed the defendant to set off UM benefits paid to the plaintiff); State Farm Mut. Auto. Ins.Co. v. Board of Regents of Univ. Sys., 226 Ga. at 311,174 S.E.2d at 922 ("[P]ayments made by the insurance company under the policy are not payments made by or on behalf of the uninsured motorist-tortfeasor, and do not affect the uninsured motorist's liability to pay the damages recovered in the lawsuit against him."); Dyet v. McKinley,139 Idaho 526, 531, 81 P.3d 1236, 1241 (2003) (holding that UM insurance benefits are a collateral source); Beaird v. Brown,58 Ill.App.3d 18, 21, 373 N.E.2d 1055, 1057, 15 Ill.Dec. 583, 585
(1978) ("[W]e find that payments received by the plaintiffs pursuant to their uninsured motorist coverage were received *Page 736 
from a collateral source."); Southard v. Lira,212 Kan. 763, 770, 512 P.2d 409, 415 (1973) ("Nor are payments made by an insurance carrier under uninsured motorist coverage, payments which a tort-feasor can utilize to diminish the amount of his liability to the injured party."); Estate ofRattenni v. Grainger, 298 S.C. 276, 278, 379 S.E.2d 890,890 (1989) ("We find no persuasive reason to distinguish underinsurance proceeds from other insurance proceeds that are subject to the collateral source rule."); and Johnson v.General Motors Corp., 190 W.Va. 236, 244, 438 S.E.2d 28,36 (1993) ("[W]e hold that the collateral source rule operates to preclude the offsetting of uninsured or underinsured benefits since the benefits are the result of a contractual arrangement which is independent of the tortfeasor. . . .").[4]
Finally, Barnett argues that, "[i]f any party has a right to pursue Barnett[,] it would be GEICO for subrogation; however, the record does not show that GEICO preserved or made any attempt to pursue reimbursement for its [UM] payment." However, Barnett offers no reference to the record supporting the proposition that Morales has contractually granted GEICO a right of subrogation.[5] Indeed, Barnett *Page 737 
affirmatively asserts that "the record does not show that GEICO preserved or made any attempt to pursue reimbursement for its [UM] payment." See Ex parte Howell, 974 So.2d 304,306 (Ala. 2007) ("`A reviewing court cannot predicate error on matters not shown by the record. . . . Indeed, a silent record supports a judgment. . . . It is the appellant's duty to file a correct record.'" (quoting Robinson v. State,444 So.2d 884, 885 (Ala. 1983))). Nor does Barnett offer any authority to support what may be an implicit assertion that GEICO's payment to Morales effects a legal subrogation that cuts off any claim Morales may have had. Birmingham NewsCo. v. Horn, 901 So.2d 27, 78 (Ala. 2004) (opinion on application for rehearing) ("`Where an appellant fails to cite any authority for an argument, this Court may affirm the judgment as to those issues, for it is neither this Court's duty nor its function to perform all the legal research for an appellant.'" (quoting Sea Calm Skipping Co. v. Cooks,565 So.2d 212, 216 (Ala. 1990))). Therefore, we reject this argument as well.[6]
 Conclusion
We affirm the judgment of the Court of Civil Appeals holding that the collateral source rule prohibits the reduction of Morales's damages award by the amount of Morales's UM benefits.
AFFIRMED.
COBB, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.
[1] Section 32-7-23(b)(4), Ala. Code 1975, defines an "uninsured motor vehicle" as a vehicle with respect to which "[t]he sum of the limits of liability under all bodily injury liability bonds and insurance policies available to an injured person after an accident is less than the damages which the injured person is legally entitled to recover."
[2] The Court of Civil Appeals interpreted Batchelor
as "implicating the legal principle that one joint tortfeasor may offset damages assessed by joint negligence by the amount of a pro tanto settlement entered into" by another tortfeasor."Morales, 978 So.2d at 726. It concluded that, because the case before us now did not involve two joint tortfeasors,Batchelor is distinguishable. The Court of Civil Appeals does not explain the mechanics of this distinction, and other jurisdictions have held that the collateral-source rule applies in cases of joint tortfeasors. Pacific Gas Elec. Co. v. Superior Court, 28 Cal.App.4th 174, 180-81,33 Cal.Rptr.2d 522, 526-27 (1994) (rejecting defendant's argument that the collateral-source rule does not apply in the case of joint tortfeasors); Adkins v. Knight,256 Ga.App. 394, 395, 568 S.E.2d 517, 519 (2002) (holding that the collateral-source rule applies where the combined negligence of an unknown driver and the defendant caused the accident); andKlosterman v. Fussner, 99 Ohio App.3d 534, 539-40,651 N.E.2d 64, 68 (1994) (applying the collateral-source rule where one defendant committed an intentional tort and the other tortfeasor was merely negligent).
[3] Barnett cites State Farm Mutual Automobile InsuranceCo. v. Mason, [Ms. 2050488, January 12, 2007] ___ So.2d ___, ___ (Ala.Civ.App. 2007), rev'd on other grounds, Exparte Mason, [Ms. 1060665, July 27, 2007] ___ So.2d ___
(Ala. 2007), for the proposition that "`despite the contractual relation between plaintiff insured and defendant insurer, this [action for UM benefits] is actually one for the tort allegedly committed by the uninsured motorist.'" (Quoting Brown v.Lumbermens Mutual Casualty Co., 285 N.C. 313, 319,204 S.E.2d 829, 834 (1974).) That case addressed whether an insured was "entitled to recover" against his UM insurance carrier, and noted "that a condition precedent to recovery has been legislatively imposed: an insured must possess an actionable claim against an uninsured motorist before proceeding against his or her UM carrier." Mason, ___ So.2d at ___,Mason did not hold that the UM insurance carrier is liable for the tort so as to make it jointly liable with the tortfeasor.
[4] The Supreme Court of Connecticut has rejected the application of the collateral-source rule in the context of underinsured-motorist insurance. That court stated:
 "We begin with the fundamental principle that the purpose of underinsured motorist insurance is to place the insured in the same position as, but no better position than, the insured would have been had the underinsured tortfeasor been fully insured. . . . Under the plaintiff's argument, however, she is in a better position because her decedent had been struck by an underinsured driver than she would have been had the same driver been fully insured. . . .
 "Furthermore, the plaintiff's putative right to recover against the defendants in the present case, for the loss that her decedent's underinsured motorist carrier has already paid, depends solely on the order of litigation in this case. . . .
 ". . . Under the plaintiff's argument, however, when she pursues her underinsured motorist policy first, as she in fact did, she can recover, not only the $650,000 that she received from her decedent's underinsured motorist carrier, but an additional amount for the same damages when she then brings an action against the defendants. Had the exact same claims been presented in a different order, however — namely, an action against the defendants first, rather than second "she agrees that she could recover only a total of $650,000. . . . Put another way, it cannot be the law that underinsured motorist benefits are, or are not, a `collateral source' depending solely on when they are sought. . . .
 "Finally, the equities do not weigh substantially in favor of the plaintiff's position. Precluding the plaintiff from obtaining double recovery does not deprive the decedent of the benefit for which she paid her underinsured motorist premium, namely, a guaranteed recovery of her wrongful death damages, subject to contractual limits, despite the fact that she was hit by an underinsured motorist, and whether there was a joint tortfeasor who could also be held liable. The only thing she is deprived of is the opportunity to recover more than she paid for."
 Haynes, 243 Conn, at 27-31, 699 A.2d at 969-72 (footnotes omitted). The Supreme Court of Connecticut also rejected the argument that the rule it adopted in Haynes created a windfall for the defendant: "In such cases, however, the policy behind the fundamental principle barring double recovery . . . simply is deemed to outweigh the policy behind the collateral source rule. . . . Such a consequence is, therefore, not a windfall under the law, but rather a necessary consequence of a fundamental policy choice." Haynes, 243 Conn, at 31-32, 699 A.2d at 972. We note, however, that the UM insurer can avoid double recovery by the insured by providing in its contract of insurance for the right of subrogation against the uninsured/underinsured tortfeasor.
[5] We also note that Barnett has not offered any authority for the implicit proposition that what has happened contractually between Morales and GEICO affects Morales's standing as against her. See Jones v. Crawford,361 So.2d 518, 522 (Ala. 1978) ("The courts of this state have held many times that what has occurred between the insurer and the insured is of no concern to the defendant — that the sum received from insurance cannot be shown in mitigation of damages for the injury." (footnote omitted)); see alsoSouthard v. Lira, 212 Kan. at 769, 512 P.2d at 414 ("The reasons generally given for the [collateral-source] rule are that the contract of insurance and the subsequent conduct of the insurer and insured in relation thereto are matters with which the wrongdoer has no concern and which do not affect the measure of his liability.").
[6] We also reject Barnett's argument that the collateral-source rule is merely a rule of evidence and that the rule does not bar the trial court from reducing the damages award based on the payment of UM benefits to the plaintiff.See American Legion Post No. 57 v. Leahey,681 So.2d 1337, 1343 (Ala. 1996) (holding that the collateral-source rule is both a rule of evidence and of substantive law),overruled on other grounds, Marsh v. Green,782 So.2d 223, 233 (Ala. 2000); see also Williston v. Ard,611 So.2d 274, 278 (Ala. 1992) ("[A]n amount of damages is not decreased by benefits received by a plaintiff from a source wholly collateral to and independent of the wrongdoer. . . .");and Restatement (Second) of Torts § 920A(2) ("Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.").