COBB, Chief Justice
(concurring specially).
I concur with the majority’s opinion in this difficult case. I agree that the plain language of § 32-7-23(a), Ala.Code 1975, necessitates the result reached in this case. However, had I been a member of this Court when it decided Ex parte Carlton, 867 So.2d 332 (Ala.2003), I would have joined Justice Woodall in his dissent. In pertinent part, Justice Woodall wrote:
“As this Court stated in Hogan [v. State Farm, Mutual Automobile Insurance Co., 730 So.2d 1157 (Ala.1998) ], ‘the Legislature, of course, has the prerogative to change the statute so as to avoid the interpretation adopted by this Court in [State Farm Automobile Insurance Co. v.] Baldwin, [470 So.2d 1230 (Ala.1985),] [State Farm Mutual Automobile Insurance Co. v.] Jeffers, [686 So.2d 248 (Ala.1996),] and [Hogan ].’ 730 So.2d at 1159 n. 1. Because the Legislature has chosen not to amend the statute, I am not convinced that this Court’s earlier interpretations of the statute were inconsistent with legislative intent. Therefore, I cannot agree that this Court should overrule Baldwin, Jeffers, or Hogan.”
Carlton, 867 So.2d at 338 (Woodall, J., dissenting). However, using the same logic, six years have passed since this Court decided Carlton, and the legislature has not amended the statute to avoid the interpretation of § 32-7-23 adopted in Carlton. Therefore, we cannot say the plain-language interpretation of this statute applied in Carlton is incorrect.
As this Court has previously observed: “We recognize that the legislative purpose in enacting statutes providing for underin-sured motorist coverage was to protect those financially and ethically responsible enough to obtain automobile liability insurance by providing insurance to compensate them for claims based on injuries or death caused by those not so responsible.” Aetna Cas. & Sur. Co. v. Turner, 662 So.2d 237, 239 (Ala.1995). This Court has also long recognized underinsured-motorist coverage as well as uninsured-motorist coverage to be a contractual relationship between the insurer and the insured. See Ex parte Barnett, 978 So.2d 729, 734 (Ala.2007) (“[A] UM [uninsured/underinsured-motorist] insurance carrier’s liability to the insured is based solely on its contractual obligations as laid out in the policy.”); Continental Nat’l Indem. Co. v. Fields, 926 So.2d 1033, 1037 (Ala.2005) (“[T]he cause of action asserted in this case under the uninsured-motorist statute is contractual .... ”); Howard v. Alabama Farm Bureau Mut. Cas. Ins. Co., 373 So.2d 628, 629 (Ala.1979) (“An action based on uninsured motorist provisions of a liability policy is ex contractu in nature.”).
The plain language of § 32-7-23, which limits an injured party’s recovery to damages that the party is “legally entitled to recover,” mandates the outcome in this case. However, it also interferes with the contractual relationship between Kendall and her insurer in that it prohibits her from receiving the contractual benefits she would have received had the tortfeasor not been acting within the line and scope of her employment with a governmental entity. I have reservations as to whether this was the legislature’s intent in adopting § 32-7-23. However, without a legislative history, we are limited to the plain language of the statute. As Justices of the Supreme Court, our power to rectify this situation is limited. “ ‘ “To declare what the law is, or has been, is a judicial power; to declare what the law shall be, is legislative.” ’ ” City of Daphne v. City of Span *1127 ish Fort, 853 So.2d 933, 942 (Ala.2003) (quoting Sanders v. Cabaniss, 43 Ala. 173, 180 (1869), quoting in turn Thomas M. Cooly, Constitutional Limitations 91-95 (1868)). I write specially to encourage the Alabama Legislature to revisit the uninsured-motorist statute, § 32-7-23, Ala. Code 1975, as well as the statutory cap on damages that can be recovered from governmental entities, § 11-93-2 and § 11— 47-190, Ala.Code 1975, to clarify whether it intended to allow for outcomes such as this.