# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00255-COA

**KENDYL K. SMITH**                                                           **APPELLANT**

**v.**

**MIRANDA FORD**                                                             **APPELLEE**

DATE OF JUDGMENT:                12/30/2021
TRIAL JUDGE:                             HON. DEWEY KEY ARTHUR
COURT FROM WHICH APPEALED:   RANKIN COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:        EDWARD C. TAYLOR
                                             KATIE RYAN VAN CAMP
ATTORNEYS FOR APPELLEE:         MICHAEL SALTAFORMAGGIO
                                             SHARON ALGENA SPENCER
NATURE OF THE CASE:                CIVIL - INSURANCE
DISPOSITION:                           AFFIRMED - 11/07/2023
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., GREENLEE AND EMFINGER, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     After Miranda Ford sustained injuries when the car driven by Kendyl Smith rear-ended Ford's vehicle, Ford filed a lawsuit against Smith, alleging negligence and requesting damages. A Rankin County Circuit Court jury found Smith liable to Ford for $302,968.92. Smith filed a motion to amend the judgment, seeking credit for uninsured/underinsured motorist (UM) coverage benefits Ford received from Allstate Property and Casualty Insurance Company (Allstate), Ford's automobile insurance carrier. The court denied the motion, and Smith appeals.

¶2.     As an issue of first impression, we conclude that UM benefits paid by an insurer to an insured plaintiff fall under the collateral-source rule and may not be used to reduce a

judgment entered against a defendant tortfeasor. Accordingly, we find no error in the trial court's denial of Smith's motion to amend the judgment and affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. On January 5, 2018, while driving her vehicle on Highway 25 in Rankin County, Smith rear-ended Ford's car, causing Ford bodily injury. Smith was insured by United Services Automobile Association (USAA) with $25,000 in liability coverage. Ford had automobile insurance through Allstate with $100,000 in UM coverage.

¶4. On January 3, 2019, Ford's attorney issued a formal demand to USAA for $500,000 or policy limits, whichever was less. The correspondence stated that the demand would remain open through the close of business on Friday, January 18, 2019. USAA tendered its policy limits of $25,000 on January 21, 2019, the Monday following the expiration of the offer. However, on March 14, 2019, Ford's attorney advised USAA that the offer to settle Ford's claims for policy limits under the USAA policy was withdrawn and issued a demand for $450,000.

¶5. In the meantime, Ford's attorney also issued a demand letter to Allstate, noting that Smith's insurance limits would be "woefully inadequate to compensate" for Ford's injuries and requesting "available UM/UIM benefits, with any offset given where appropriate." The letter also requested that Allstate "provide written confirmation to settle with the tortfeasor and confirm that you will waive any subrogation against Mr[s]. Smith." On February 22, 2019, an Allstate representative responded with a letter stating, "We are waiving Med pay

2

and UIM subrogation and consent to the settlement between your client Miranda Ford and USAA." Ford executed an agreement with Allstate on February 25, 2019, which provided in part:

> The undersigned hereby *assigns, transfers and sets over to the Allstate Property and Casualty Insurance Company any and all claims or causes of action or which the undersigned now has, or may hereafter have, to recover against any person or persons as the result of said accident and loss above stated to the extent of the payment above made*; the undersigned agrees that the Allstate Property and Casualty Insurance Company may enforce the same in such manner as shall be necessary or appropriate for the use and benefit of the Allstate Property and Casualty Insurance Company. . . .

(Emphasis added).

¶6. On March 19, 2019, Ford filed a complaint against Smith in the Rankin County Circuit Court, alleging negligence and seeking damages for personal injury, medical expenses, pain and suffering, and mental anguish. A trial was held on December 13-15, 2021, and the jury awarded Ford $302,968.92 in damages.[1] The court's final judgment was entered on December 30, 2021.

¶7. Smith filed a motion to amend the judgment under Mississippi Rule of Civil Procedure 59, arguing that she was entitled to an offset for the monies paid to Ford under the parties' insurance policies ($25,000 from USAA and $75,000 from Allstate). Smith also claimed that because Ford had "assigned $75,000.00 of her claim to Allstate, [Ford] cannot

---

[1] The breakdown of the damages is economic damages (including medical expenses) of $100,468.92; non-economic damages (including pain and suffering) of $200,000; and future medical care cost of $2,500.00.

3

be compensated for the same bodily injuries for which she has been awarded in the Final Judgment."

¶8. In her reply, Ford requested that the trial court "deny [Smith's] motion to the extent that it calls for the judgment to be offset by the amount of Plaintiff's [UM] coverage th[r]ough Allstate." Because USAA later issued Ford a check for $25,000 (for bodily injury liability coverage) on January 6, 2022, Ford filed a "Notice of Partial Satisfaction of Judgment" in April 2022 and agreed that the judgment should be amended to $277,968.92.

¶9. The circuit court denied Smith's motion to amend the judgment. Smith appeals the court's ruling denying her motion, claiming that she is entitled to judgment credit for the $75,000 in UM benefits that Allstate paid to Ford.

## STANDARD OF REVIEW

¶10. A circuit court's denial of a Rule 59 motion is reviewed for an abuse of discretion. *Miller v. Smith*, 229 So. 3d 148, 154 (¶27) (Miss. Ct. App. 2016). "A party may only obtain relief on a Rule 59 motion upon showing: (1) 'an intervening change in controlling law,' (2) 'availability of new evidence not previously available,' or (3) the 'need to correct a clear error of law or to prevent manifest injustice.'" *Id*. at 154-55 (¶28) (quoting *Brooks v. Roberts*, 882 So. 2d 229, 233 (¶15) (Miss. 2004)). If the circuit court is "convinced that a mistake of law or fact has been made, or that injustice would attend allowing the judgment to stand," then the circuit court has the discretion to "grant a new trial or to amend the judgment" under Rule 59. *McNeese v. McNeese*, 119 So. 3d 264, 272 (¶20) (Miss. 2013)

4

(citation omitted).

## DISCUSSION

### I.    Collateral-Source Rule

¶11.    Smith asserts that Ford "has effectively been placed in a better position, which does not align with Mississippi [UM] motorist law, and [that] there has been, in effect, a double recovery that must be corrected by an offset or credit in favor of Ms. Smith." Ford responds that "the general rule is that a defendant is not entitled to benefit from collateral sources like insurance paid to the plaintiff that are unrelated to the tortfeasor." While conceding that "[t]he collateral source rule is ever alive in Mississippi," Smith argues that the rule does not apply under the circumstances of this case, and the parties acknowledge that there are no Mississippi cases that have addressed whether the collateral-source rule may encompass UM benefits.

¶12.    The Mississippi Supreme Court has held that under the "collateral-source rule, 'a defendant tortfeasor is not entitled to have damages for which he is liable reduced by reason of the fact that the plaintiff has received compensation for his injury by and through a totally independent source, separate and apart from the defendant tortfeasor.'" *Robinson Prop. Grp. v. Mitchell*, 7 So. 3d 240, 244 (¶12) (Miss. 2009) (quoting *Cent. Bank of Miss. v. Butler*, 517 So. 2d 507, 511-12 (Miss. 1987)); *see also Fos v. Wal-Mart Stores E. LP*, No. 3:12-cv-735-LG-JCG, 2015 WL 11120671, at *2 (S.D. Miss. June 2, 2015) ("In Mississippi, the collateral source rule provides that compensation or indemnity for the loss received by

5

plaintiff from a collateral source, wholly independent of the wrongdoer, as from insurance, cannot be set up by the latter in mitigation or reduction of damages." (quoting *Chickaway v. United States*, No. 4:11-cv-00022-CWR, 2012 WL 3236518, at *1 (S.D. Miss. Aug. 7, 2012))).

¶13.    Smith urges this Court to follow the Connecticut Supreme Court's decision in *Haynes v. Yale–New Haven Hospital*, 699 A.2d 964 (Conn. 1997), which determined that UM insurance is unlike "those traditional types of insurance" and "operate[s] in part as a liability insurance surrogate for the [UM] third party tortfeasor." *Id*. at 968.  The *Haynes* court "conclude[d] that, for the particular purpose of characterizing [UM] payments, the relationship in the present case between the underinsured carrier and the defendant may be viewed as analogous to that of joint tortfeasors, and thus that the general tort rule precluding double recovery from joint tortfeasors should apply." *Id*. at 969.

¶14.    We disagree with the Connecticut Supreme Court's reasoning in *Haynes*.  Instead, we find the following case more instructive to our analysis.  In *Hairston v. Harward*, 821 S.E.2d 384, 385 (N.C. 2018), the Supreme Court of North Carolina considered whether a "trial court erred by crediting a payment made to plaintiff . . . under his own [UM] coverage against the amount of the judgment that plaintiff obtained against defendant . . . arising from a motor vehicle collision."  In initially appealing the decision, the opposing parties submitted the same arguments we consider here: the plaintiff asserted that the trial court's ruling "violated the collateral source rule"; the defendant-tortfeasor argued that under common law

6

principles, a plaintiff "should not be permitted a double recovery for a single injury." *Id*. at 387-88. The North Carolina Court of Appeals upheld the trial court's decision,[2] but the North Carolina Supreme Court reversed the ruling, holding that "treating payments made as the result of a plaintiff's decision to purchase optional underinsured motorist coverage as subject to the collateral source rule is more consistent with the policy justifications underlying the collateral source rule . . . than is the result contended for by defendant in this case." *Id*. at 393. The *Hairston* court reasoned,

> A decision that a plaintiff must credit the payment that he or she receives as a result of the decision to purchase such optional coverage against the judgment entered against the defendant whose negligence caused the plaintiff's injuries strikes us as likely to discourage North Carolina citizens from purchasing [UM] coverage, a result that would have obvious deleterious consequences. . . . [T]here is no escaping the fact that one party to this case or the other will receive what could be fairly characterized as a "windfall" as a result of our decision in this case. In light of that fact, *we believe that the better option is to allow plaintiff to retain the "windfall" that results from his foresight in voluntarily electing to purchase underinsured motorist coverage rather than allowing defendant, who failed to purchase enough liability coverage to adequately compensate plaintiff for his injuries, to be the ultimate beneficiary of plaintiff's decision to procure additional insurance coverage.*

*Id*. at 394 (emphasis added); *see also Llewellyn v. White*, 831 S.E.2d 494, 501 (Va. 2019) (agreeing with *Hairston* and affirming trial court's ruling that tortfeasor was not entitled to $750,000 credit for UM benefits paid to insured plaintiff); *Cutsinger v. Redfern*, 12 So. 3d 945, 952 (La. 2009) ("The [collateral source] rule reflects the beliefs that the tortfeasor should not profit from the victim's prudence in obtaining insurance, and that by reducing the

---

[2] *Hairston v. Harward*, 808 S.E.2d 286, 293 (N.C. Ct. App. 2017).

amount the tortfeasor would have to pay, the deterrent effect of the law would be hampered."). Like the insureds in these cases, Ford elected to purchase UM coverage, and she was entitled to any payment resulting from her prudence in doing so.[3]

¶15.　The Supreme Court of North Carolina's reasoning in *Hairston* is consistent with numerous other jurisdictions deciding this issue. In *Ex parte Barnett*, 978 So. 2d 729 (Ala. 2007), the plaintiff/insured was awarded a $35,000 judgment following an automobile accident, and the defendant tortfeasor "moved for a set-off of $20,000 to account for the [UM] insurance proceeds" the insured had received from her automobile insurer. *Id*. at 730. On appeal, the Supreme Court of Alabama held "that UM insurance benefits are a collateral source that may not be used to diminish an award in favor of the plaintiff." *Id*. at 735. *See also Schwartz v. Hasty*, 175 S.W.3d 621, 628 (Ky. Ct. App. 2005) ("Allowing tortfeasors a credit or setoff for UIM payments would provide an unintended benefit to the tortfeasor and relieve him of some responsibility for his actions, while depriving the injured party/insured of the benefit of his payments of premiums for the insurance."); *Johnson ex rel. Johnson v. Gen. Motors Corp.*, 438 S.E.2d 28, 36 (W. Va. 1993) (holding that "the collateral source rule operates to preclude the offsetting of uninsured or underinsured benefits since the benefits are the result of a contractual arrangement which is independent of the tortfeasor"); *Est. of Rattenni v. Grainger*, 379 S.E.2d 890, 890 (S.C. 1989) (finding "no persuasive reason to

---

[3] *Accord McDermott Inc. v. AmClyde*, 511 U.S. 202, 219 (1994) (recognizing that "making tortfeasors pay for the damage they cause can be more important than preventing overcompensation").

8

distinguish underinsurance proceeds from other insurance proceeds that are subject to the collateral source rule" and agreeing with trial court's ruling "that the collateral source rule applied because the benefits received were from the injured party's own underinsurance policy for which she paid the premiums").

¶16. Finding these cases persuasive authority,[4] we conclude that the UM benefits paid to Ford constituted a collateral source for the purposes of the rule. Therefore, Smith was not entitled to a credit for the amount of those benefits. *See generally* 22 Am. Jur. 2d *Damages* § 421 (2019) ("The amount recoverable for personal injuries is not decreased by the fact that the injured party has been wholly or partly indemnified for the loss by proceeds from accident insurance if the tortfeasor did not contribute to the payment of the premiums.").

## II. Assignment and Subrogation Waiver/Judicial Estoppel

¶17. Citing the assignment language from Ford's release agreement with Allstate,[5] Smith also contends that Ford "could no longer personally recover the $75,000.00 she received in UM benefits" and that "only Allstate has grounds to seek subrogation for the monies it paid to [Ford]." Smith relies on our supreme court's decision in *Preferred Risk Mutual Insurance Co. v. Courtney*, 393 So. 2d 1328, 1332-33 (Miss. 1981), stating, "*Absent an assignment*,

---

[4] *See Griffith v. Gulf Ref. Co.*, 215 Miss. 15, 36, 61 So. 2d 306, 307 (1952) (noting that although our appellate courts "are not bound by the decisions of courts of other jurisdictions on similar questions, . . . it is proper for us to consider them and that we may follow them only if we are satisfied of the soundness of the reasoning by which they are supported").

[5] *See supra* ¶5.

defendants in the circuit court cases remained liable for all damages because of the collateral source rule." (Emphasis added).

¶18. However, as Ford points out, Allstate expressly agreed (in the letter from an Allstate representative to Ford's attorney), to waive "UIM subrogation[.]" Anticipating this argument, Smith contends that Allstate's waiver was induced through Ford's misrepresentation that there had been a settlement with USAA; so Ford should be judicially estopped from asserting that there was no assignment because Allstate had waived subrogation. "The doctrine of judicial estoppel should be applied to prevent a party from achieving unfair advantage by taking inconsistent positions *in litigation*." *Copiah County v. Oliver*, 51 So. 3d 205, 207 (¶9) (Miss. 2011) (emphasis added).

¶19. There is no evidence in the record to support Smith's argument for judicial estoppel because Ford's demand letters for insurance benefits do not constitute judicial proceedings or litigation; so the doctrine of judicial estoppel would not apply. *See Jackson v. Harris*, 303 So. 3d 454, 457 (¶9) (Miss. Ct. App. 2020) ("A party will be judicially estopped from taking a subsequent position if (1) the position is inconsistent with one *previously taken during litigation*, (2) *a court accepted the previous position*, and (3) the party did not inadvertently take the inconsistent positions." (emphasis added)).

¶20. We further find *Hairston* instructive in addressing this issue of waiver. The insurer in *Hairston* also waived subrogation, which factored into the trial court's ruling that the "defendant was entitled to a credit for the amount that [the insurer] had paid to plaintiff."

*Hairston*, 821 S.E.2d at 386-87. The Supreme Court of North Carolina disagreed with the trial court's reasoning, holding:

> Had [the insurer] refrained from waiving its subrogation rights and attempted to assert those rights against defendant, the same protection against a windfall recovery would exist in this case. We see no reason why [the] defendant should be entitled to different treatment simply because [the insurer] elected to waive its statutory subrogation rights rather than attempting to enforce them.

*Id*. at 395. "[T]his is a situation where a double recovery is appropriate because plaintiff bargained for such a double recovery when he purchased his [UM] policy[, and t]he fact that [the UM insurer] has claimed no subrogation lien against plaintiff is irrelevant." *Stanford v. City of Flora*, 112 N.E.3d 136, 145 (Ill. App. Ct. 2018). Similarly, we find that Allstate's decision to waive subrogation rights should have no effect on Smith's liability under these circumstances.

¶21. Finding no error in the trial court's denial of Smith's motion to amend the judgment, we affirm.

¶22. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**